## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**NATHANIEL DILL, Administrator of the Estate
of DYMIR STANTON, deceased**
1724 South Frazier Street
Philadelphia, PA 19143

*Plaintiffs*

v.

**80-LOWER**
5719 Lawton Loop East Drive
Indianapolis, Indiana 46216

And

**TACTICAL GEAR HEADS, LLC**
9339 Castlegate Drive,
Indianapolis, Indiana 46256

And

**CHAD MYERS**
11374 Falling Water Way
Fishers, Indiana 46037

And

**JOHN DOE/ABC COMPANY**

A fictitious designation for any company, entity,
corporation, LLC, fictitious name, or person whose
name, identity and/or action(s) are presently
unknown to Plaintiffs but whose wrongful, reckless,
and/or negligent misconduct, caused the harm,
injuries, and/or damages that resulted in Plaintiff's
Decedent's death

*Defendants*

**CIVIL ACTION NO:**


**JURY TRIAL DEMANDED**

## CIVIL ACTION – COMPLAINT

Plaintiffs, by and through their undersigned attorneys, Kline & Specter, P.C., hereby demand damages from Defendants in an amount in excess of the local arbitration limits, exclusive of interest, costs and damages for prejudgment delay, upon the causes of action set forth below:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Nathaniel Dill, is an adult citizen of the Commonwealth of Pennsylvania, residing therein at 1724 South Frazier Street Philadelphia, PA 19143. Nathaniel is the father of Plaintiffs' decedent, Dymir Stanton.

2. Plaintiffs' decedent, Dymir Stanton, was born July 18, 1993, and died intestate on July 3, 2023, at the age of 31 years old.

3. Plaintiff, Nathaniel Dill, has been properly appointed as administrator of the estate of Dymir Stanton.

4. Plaintiff, Nathaniel Dill, files this Wrongful Death and Survival Action in his individual capacity as parent of Dymir Stanton and in his capacity as administrator of the Estate of Dymir Stanton, on behalf of the Wrongful Death beneficiaries listed herein and the Estate of Dymir Stanton.

5. Plaintiff's decedent, had one daughter, a minor, born on December 16, 2018 and herein referred to as N.S.

6. Defendant 80-Lower is a corporation or other jural entity organized under the laws of Indiana with a corporate address at 5719 Lawton Loop East Drive, Indianapolis, Indiana 46216,

which was at all relevant times in the business of selling, designing, manufacturing, marketing and distributing unserialized ghost gun products throughout the United States, including Philadelphia, Pennsylvania.

7. At all relevant times hereto, Defendant 80-Lower conducted systematic and continuous business activity within this judicial district.

8. Defendant Tactical Gear Heads LLC is a corporation or other jural entity organized under the laws of Indiana with a corporate address at 9339 Castlegate Drive, Indianapolis, Indiana 46256, which was at all relevant times an owner of Defendant 80-Lower and in the business of selling, designing, manufacturing, marketing and distributing unserialized ghost gun products throughout the United States, including Philadelphia, Pennsylvania.

9. At all relevant times hereto, Defendant Tactical Gear Heads LLC conducted systematic and continuous business activity within this judicial district.

10. Defendant Chad Myers is a president, founder and owner of Defendant 80-Lower and Tactical Gear Heads LLC, with an address at 11374 Falling Water Way, Fishers, Indiana 46037, who was at all relevant times in the business of selling, designing, manufacturing, marketing and distributing unserialized ghost gun products throughout the United States, including Philadelphia, Pennsylvania.

11. At all relevant times hereto, Defendant Chad Myers conducted systematic and continuous business activity within this judicial district.

12. John Doe/ABC Company is a fictitious designation for any company, entity, corporation, limited liability company, fictitious name, or person whose name, and/or identity are presently unknown to plaintiffs but whose wrongful, reckless, and or negligent conduct, caused the harm,

injuries, and/or damages that resulted in Plaintiff's death. After conducting a reasonable search with due diligence, John Doe/ABC Company's actual name is unknown to Plaintiffs at this time.

13. Subject matter jurisdiction is proper under 28 U.S.C. § 1332 as Plaintiffs and Defendants are residents of separate states and because the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

14. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim, namely Kimbrady Carriker's purchase of the ghost gun components, including a receiver for an AR-15 style ghost gun, and Carriker's use of same to murder five people, occurred in this judicial district.

15. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because Defendants have sufficient minimum contacts with the Commonwealth of Pennsylvania and have intentionally availed themselves of the markets within Pennsylvania through the promotion, sale, marketing, and distribution of their products, including ghost gun components.

## **OPERATIVE FACTS**

16. The preceding paragraphs are incorporated by reference as if fully set forth herein.

17. On or before July 1, 2023, Defendants, 80-Lower, Tactical Gear Heads LLC, and Chad Meyers sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker inside the Commonwealth of Pennsylvania via an online sale.

18. A "receiver" is the key component to a long gun firearm such as an AR-15 style firearm.

19. Defendants, 80-Lower, Tactical Gear Heads LLC, and Chad Meyers sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker in a manner that evaded and/or circumvented the Pennsylvania Uniform Firearms Act ("PUFA") allowing and/or facilitating Kimbrady Carriker to acquire a deadly AR-15 style firearm where he otherwise could not have.

20. The Pennsylvania Legislature passed the first Pennsylvania Uniform Firearms Act in 1931 to "regulate and license the sale, transfer, and possession" of firearms throughout the Commonwealth.

21. Over the years the legislature has repeatedly amended the Act, with substantial revisions occurring in 1995 in an effort "to provide support to law enforcement in the area of crime prevention and control".

22. On December 16, 2019 Pennsylvania Attorney General Josh Shapiro issued a finding that a ghost gun component receiver is a firearm within the context of the Pennsylvania Uniform Firearms Act.

23. Defendants sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker.

24. PUFA's provisions mandated that a person may not possess a firearm that does not have a serial number on it.

25. Defendants sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker that did not have a serial number on them.

26. Defendants John Doe and/or ABC Company designed, manufactured, sold, transferred, advertised, marketed, and/or otherwise facilitated the sale of ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker.

27. Defendants sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker, without being licensed as required by PUFA and other relevant Pennsylvania Law.

28. Defendants sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker, without maintaining purchase records for twenty years as required by PUFA and other relevant Pennsylvania Law.

29. Defendants sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker, without conducting background checks on all firearm purchases as required by PUFA and other relevant Pennsylvania Law.

30. Defendants sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker, without first obtaining a completed application/record of sale from Carriker, including his name, address, birthdate, gender, race, physical description, social security number and the caliber, length of barrel, make, model, and manufacturer's serial number of the firearm to be transferred as required by PUFA.,

31. Defendants sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker, without sending Carriker's completed application to the Pennsylvania State Police to conduct a background check on the potential purchaser, including a thorough check into criminal history, juvenile delinquency history, and any mental health records as required by PUFA.

32. Defendants sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker, without allowing Pennsylvania State Police to confirm that no disqualifying information regarding Kimbrady Carriker existed as required by PUFA.

33. When Defendants sold ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker disqualifying information regarding Kimbrady Carriker that would have prevented and/or impeded the sale of an AR-15 style weapon to him existed,

including, but not limited to Carriker's Conviction in Philadelphia County of a Violation of the Uniform Firearms Act 18 § 6106, docketed as CP-51-CR-0302781-2004.

34. This conviction would have been readily available to the Pennsylvania State Police through their Pennsylvania Instant Check System (PICS), a system used for background checks of potential purchasers of firearms if Kimbrady Carriker had attempted to purchase an AR-15 style firearm through a licensed firearm dealer.

35. Defendants negligently entrusted ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker.

36. Defendants, 80-Lower, Tactical Gear Heads LLC, and Chad Meyers, however, created a way for a convicted criminal such as Kimbrady Carriker to circumvent the protections, laws and rules established by PUFA, by selling ghost gun components, including a receiver for an AR-15 style ghost gun to Kimbrady Carriker online and shipping it to him without complying with the requirements of the PUFA, such as the background check.

37. Kimbrady Carriker viewed the online marketing of Defendants, 80-Lower, Tactical Gear Heads LLC, and Chad Meyers.

38. Defendants, 80-Lower, Tactical Gear Heads LLC, and Chad Meyers, designed, marketed and employed a method of sale that was intended to be used by criminals and purchasers who intended to use their ghost gun products in an unlawful manner bosting on their website that they circumvented protections, laws and rules such as those established by PUFA.

39. Defendants marketed their ghost guns to people who wished to buy them in a manner that evaded legally mandated procedures and record keeping using a picture of a firearm receiver with the message "Hey girl, are you an 80% lower? Cause I wanna drill your 3rd hole & not tell

anyone about you." Referring to Defendants' offer to sell the key firearm component in such a
way that will evade legally mandated oversight.



40. Defendants marketed their ghost guns to people who wished to buy them in a manner that
evaded legally mandated procedures and record keeping displays using a picture of a firearm
receiver and other ghost gun components with the message "Free men don't ask for permission.
Built not bought." Referring to Defendants' offer to sell ghost gun components in such a way that
will circumvent legally required purchaser request forms such as the one mandated by PUFA.



41. As a result, Kimbrady Carriker, purchased ghost gun components, including a receiver
for an AR-15 style ghost gun from Defendants, 80-Lower, Tactical Gear Heads LLC, and Chad
Meyers, and on or about July 3, 2023, used it to brutally murder Plaintiff's decedent, Dymir

Stanton, at or near the intersection of 60th Street and Kingsessing Avenue in Philadelphia, Pennsylvania.

42. As set forth more fully below, Defendants' negligent, reckless, intentional, fraudulent, and/or outrageous conduct, caused, increased the risk of harm of, and/or was a substantial contributing causal factor that resulted in, Plaintiff's damages which include the death and suffering of Plaintiff's decedent, Dymir Stanton, and include, but are not limited to, the following:

    a.  death

    b.  dismemberment

    c.  pain and suffering

    d.  mental anguish and fear

    e.  knowledge of impending death

    f.  lost wages

    g.  loss of earning capacity

    h.  funeral expenses

    i.  medical expenses

    j.  all damages allowable under the Survival Act, 42 Pa. C.S.A § 8302, the applicable Rules of Civil Procedure and the decisional law interpreting the Survival Act, including the total estimated future earning power less the cost of personal maintenance, and/or pain and suffering endured by Dymir Stanton prior to his death, including but not limited to physical pain and suffering, mental suffering, loss of life's pleasures, disfigurement and humiliation; and

    k.  all damages allowable under the Wrongful Death Act, 42 Pa. C.S.A§ 8301, the applicable Rules of Civil Procedure and all decisional law interpreting the Wrongful Death Act, including

damages for medical, funeral, and burial expenses, expenses of administration, monetary support

Dymir Stanton would have provided during his lifetime, the value of services provided by Dymir

Stanton or which could have been expected to have been performed in the future by Dymir

Stanton, and all pecuniary losses suffered as a result of his death.

43. The catastrophic injuries and death of Plaintiff's decedent, Dymir Stanton, were caused

solely and exclusively by the sale, use, designing, manufacturing, marketing and distributing of

unserialized ghost gun products by Defendants, 80-Lower, Tactical Gear Heads LLC, and Chad

Meyers and were due in no manner whatsoever to any act or failure to act by Plaintiffs' decedent.

**COUNT I**
**NEGLIGENCE**
**<u>Plaintiff v. Defendants 80 Lower, Tactical Gear Heads LLC, and Chad Myers</u>**

44. Plaintiff incorporates by reference all of the above paragraphs as though set forth fully

herein.

45. At all relevant times hereto, Defendants owed a duty to sell, design, manufacture, market

and distribute their products in a safe manner.

46. At all relevant times hereto, Defendants owed a duty to sell, design, manufacture, market

and distribute their products in accordance with the protections afforded by the Pennsylvania

Uniform Firearms Act.

47. At all relevant times hereto, Defendants owed a duty to sell, design, manufacture, market

and distribute their products such that potential purchasers could only obtain a firearm from them

after the completion of a thorough background check that confirmed that there was no

disqualifying information related to the potential buyer.

48. At all relevant times hereto, Defendants owed a duty to sell, design, manufacture, market

and distribute their products with appropriate record keeping.

49. At all relevant times hereto, Defendants owed a duty to sell, design, manufacture, market and distribute their products with an appropriate serial number system.

50. At all relevant times hereto, Defendants knew or should have known that those prohibited from possessing firearms would inevitably pursue firearms that could be obtained without an appropriate background check.

51. At all relevant times hereto, Defendants knew or should have known that those who intended to use a firearm for a criminal act would inevitably pursue firearms that could be obtained without an appropriate background check.

52. At all relevant times hereto, Defendants knew or should have known that those prohibited from possessing firearms would inevitably pursue firearms that could be obtained without appropriate record keeping.

53. At all relevant times hereto, Defendants knew or should have known that those who intended to use a firearm for a criminal act would inevitably pursue firearms that could be obtained without appropriate record keeping.

54. At all relevant times hereto, Defendants knew or should have known that those prohibited from possessing firearms would inevitably pursue firearms that could be obtained without an appropriate serial number.

55. At all relevant times hereto, Defendants knew or should have known that those who intended to use a firearm for a criminal act would inevitably pursue firearms that could be obtained without an appropriate serial number.

56. Defendants breached the duty they owed and were negligent, careless, and reckless in selling, designing, manufacturing, marketing and distributing ghost gun components, including a receiver for an AR-15 style ghost gun in one or more of the following respects:

a.  Selling and/or distributing a receiver for an AR-15 style ghost gun to Kimbrady Carriker causing injury and/or death;

b.  Selling and/or distributing a receiver for an AR-15 style ghost gun to Kimbrady Carriker without requiring an appropriate request form causing injury and/or death;

c.  Selling and/or distributing a receiver for an AR-15 style ghost gun to Kimbrady Carriker without requiring an appropriate background check causing injury and/or death;

d.  Selling and/or distributing a receiver for an AR-15 style ghost gun to Kimbrady Carriker that did not have an appropriate serial number causing injury and/or death;

e.  Selling and/or distributing a receiver for an AR-15 style ghost gun to Kimbrady Carriker without doing appropriate record keeping causing injury and/or death;

f.  Selling and/or distributing a receiver for an AR-15 style ghost gun to Kimbrady Carriker without submitting appropriate records to the Pennsylvania State Police, causing injury and/or death;

g.  Marketing a receiver for an AR-15 style ghost gun to Kimbrady Carriker without requiring an appropriate request form causing injury and/or death;

h.  Marketing a receiver for an AR-15 style ghost gun to Kimbrady Carriker without requiring an appropriate background check causing injury and/or death;

i.  Marketing a receiver for an AR-15 style ghost gun to Kimbrady Carriker that did not have an appropriate serial number causing injury and/or death;

j.  Marketing a receiver for an AR-15 style ghost gun to Kimbrady Carriker without doing appropriate record keeping causing injury and/or death;

k.  Marketing a receiver for an AR-15 style ghost gun to Kimbrady Carriker without submitting appropriate records to the Pennsylvania State Police, causing injury and/or death;;

57. Defendants' negligence, carelessness, and recklessness in selling, designing,

manufacturing, marketing and distributing ghost gun components, including a receiver for an

AR-15 style ghost gun were direct and proximate causes of the severe injuries, death and damages as previously set forth herein.

**WHEREFORE,** Plaintiff demands damages, including compensatory and punitive damages, against all Defendants, jointly and severally with all defendants named herein, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs.

**COUNT II**
**NEGLIGENT/RECKLESS MISREPRESENTATION**
**<u>Plaintiff v. Defendants 80 Lower, Tactical Gear Heads LLC, and Chad Myers</u>**

58. Plaintiff incorporates by reference all of the above paragraphs as though set forth fully herein.

59. Defendants deceptively advertised and purposefully misled the public, including Pennsylvania Law Enforcement, through their acts and omissions asserting that ghost guns were legal in Pennsylvania while disregarding regulations applicable to selling and manufacturing firearms.

60. Defendants exercised control over their own sales and shipments of guns and over their decision not to require background checks for every sale not to serialize every receiver, and not to properly record sales in accordance with Pennsylvania law.

61. As a direct and foreseeable consequence of Defendants conduct, Kimbrady Carriker obtained ghost gun components, including a receiver for an AR-15 style ghost gun from Defendants and used it to kill Plaintiff's decedent.

**WHEREFORE,** Plaintiff demands damages, including compensatory and punitive damages, against all Defendants, jointly and severally with all defendants named herein, in an amount in

excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs.

## COUNT III
## NEGLIGENT/RECKLESS FALSE, MISLEADING, OR DECEPTIVE ADVERTISING
### Plaintiff v. Defendants 80 Lower, Tactical Gear Heads LLC, and Chad Myers

62. Plaintiff incorporates by reference all of the above paragraphs as though set forth fully herein.

63. Defendants engaged in false, misleading, and/or deceptive advertising through their acts and/or omissions, asserting that ghost guns were legal in Pennsylvania in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL).

64. As a direct and foreseeable consequence of Defendants conduct, Kimbrady Carriker obtained ghost gun components, including a receiver for an AR-15 style ghost gun from Defendants and used it to kill Plaintiff's decedent.

**WHEREFORE,** Plaintiff demands damages, including compensatory and punitive damages, against all Defendants, jointly and severally with all defendants named herein, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs.

## COUNT IV
## FRAUDULENT/INTENTIONAL MISREPRESENTATION
### Plaintiffs v. Defendants 80 Lower, Tactical Gear Heads LLC, and Chad Myers

65. Plaintiff incorporates by reference all of the above paragraphs as though set forth fully herein.

66. Defendants knowingly and intentionally misrepresented the legality and traceability of their firearm/ ghost gun components, including by advertising and distributing such products in a

manner designed to evade legal scrutiny and falsely assure the public and regulators that their conduct was lawful.

67. Defendants made these misrepresentations with actual knowledge that the products they were selling, including unserialized lower receivers, were being used by prohibited purchasers to assemble untraceable firearms, and with the intent of inducing consumers to rely on these representations in purchasing such products.

68. Defendants misled consumers, including Kimbrady Carriker, by concealing the illegal and dangerous nature of their products and business practices, and by falsely implying that their products complied with state and federal firearm regulations.

69. Plaintiffs and the general public, including prohibited individuals such as Carriker, justifiably relied on these misrepresentations to believe that Defendants' products could be lawfully purchased and possessed in Pennsylvania without serial numbers or background checks.

70. As a direct and foreseeable result of these intentional misrepresentations, Kimbrady Carriker acquired ghost gun components from Defendants, including a receiver for an AR-15 firearm, and used them to murder Plaintiff's decedent.

**WHEREFORE,** Plaintiff demands damages, including compensatory and punitive damages, against all Defendants, jointly and severally with all defendants named herein, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs.

## COUNT V
## PUBLIC NUISANCE
## Plaintiff v. Defendants 80 Lower, Tactical Gear Heads LLC, and Chad Myers

71. Plaintiff incorporates by reference all of the above paragraphs as though set forth fully herein.

72. Defendants, through the manufacture, advertisement, and sale of unserialized and untraceable firearm components, including so-called "80% lower receivers," created, maintained, and contributed to a public nuisance that endangers the health, safety, and welfare of the public, including residents of Pennsylvania.

73. Defendants knowingly supplied firearm components in a manner designed to circumvent background check laws and other regulatory safeguards intended to prevent prohibited individuals from acquiring deadly weapons.

74. The widespread availability of Defendants' ghost gun kits to criminals, minors, and other prohibited purchasers, without serial numbers or purchase records, has substantially interfered with public safety and law enforcement's ability to trace firearms and prevent gun violence.

75. Defendants' conduct was unreasonable, intentional, reckless and undertaken with full knowledge that their business model facilitated the proliferation of untraceable firearms, including in communities plagued by gun violence.

76. As a direct and foreseeable result of Defendants' conduct, Kimbrady Carriker obtained firearm components from Defendants and used them to assemble a ghost gun, a firearm that he otherwise would not have been able to obtain, which he then used to murder Plaintiff's decedent.

77. The public nuisance created by Defendants is ongoing and has caused, and continues to cause, harm to the general public and specific injury to Plaintiff and Plaintiff's decedent.

**WHEREFORE,** Plaintiff demands damages, including compensatory and punitive damages, against all Defendants, jointly and severally with all defendants named herein, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs.

## COUNT VI
## CIVIL CONSPIRACY

**Plaintiff v. Defendants 80 Lower, Tactical Gear Heads LLC, and Chad Myers**

78. Plaintiff incorporates by reference all of the above paragraphs as though set forth fully herein.

79. Defendants 80 Lower, Tactical Gear Heads LLC, and Chad Myers acted in concert with each other, and with others presently unknown, pursuant to a common plan and understanding to design, market, and sell untraceable firearm components, including unserialized lower receivers, to individuals without background checks and without compliance with applicable firearm regulations.

80. The object of this conspiracy was to profit from the manufacture and distribution of ghost guns by intentionally circumventing state and federal firearm laws, including laws requiring serialization, background checks, and recordkeeping.

81. As part of this agreement and common plan, Defendants knowingly took overt actions in furtherance of the conspiracy, including but not limited to designing ghost gun components for easy assembly into fully functional firearms, advertising those products as legal and accessible, shipping them to jurisdictions with restrictive gun laws and providing instructions on how to complete the weapons without government oversight.

82. Defendants' conduct was willful, malicious, and done with the specific intent of undermining public safety regulations and facilitating the possession of firearms by individuals who are legally prohibited from owning them.

83. As a direct and foreseeable result of the actions taken in furtherance of this conspiracy, Kimbrady Carriker acquired ghost gun components from Defendants, assembled a firearm, and used it to kill Plaintiff's decedent.

84. Plaintiff suffered injuries and losses as a result of the wrongful acts carried out pursuant to Defendants' unlawful agreement.

**WHEREFORE,** Plaintiff demands damages, including compensatory and punitive damages, against all Defendants, jointly and severally with all defendants named herein, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs.

### COUNT VII
### STRICT PRODUCTS LIABILITY
### Plaintiff v. Defendants 80 Lower, Tactical Gear Heads LLC, and Chad Myers

85. Plaintiff incorporates by reference all of the above paragraphs as though set forth fully herein.

86. At all relevant times hereto, Defendants knew or should have known of the foreseeable risk of injuries inherent in the design of unserialize and untraceable ghost gun components, including a receiver for an AR-15 firearm.

87. At the time Defendants designed, manufactured, marketed, sold, and/or distributed the subject unserialize and untraceable ghost gun components, including a receiver for an AR-15 firearm it was defective in its design and manufacture, unsafe for its foreseeable and intended use because it was unserialized and untraceable, causing an avoidable and unacceptable risk of improper use and resulting injuries and death.

88. The unserialized and untraceable ghost gun components, including a receiver for an AR-15 firearm did not perform as an ordinary consumer would have expected it to perform and was defective under the consumer expectation test.

89. A reasonable person would conclude that the possibility and serious harm caused by the defective design of the subject unserialized and untraceable ghost gun components, including a receiver for an AR-15 firearm outweighs the cost of making them safe.

90. Based upon the known probability and seriousness of harm potentially caused by the defects in the design of the unserialized and untraceable ghost gun components, including a receiver for an AR-15 firearm and the fact that taking the basic precaution of adding an appropriate serial number would require little to no additional cost, this product was also defective under the risk utility test.

91. The unserialized and untraceable ghost gun components, including a receiver for an AR-15 firearm was defective, subjecting Defendants to strict liability.

92. The defectiveness and unreasonably dangerous condition of the unserialized and untraceable ghost gun components, including a receiver for an AR-15 firearm were direct and proximate causes of the severe injuries, death, and damages, as previously set forth herein.

93. Defendants are strictly liable to Plaintiff for designing, manufacturing, marketing and/or distributing the defective and unreasonably dangerous unserialized and untraceable ghost gun components, including a receiver for an AR-15 firearm in that the inherent risks associated with the product outweighed the benefits of its use and a safer alternative design was economically and technologically feasible at the time that the product left the control of Defendants and would not have impaired the functionality, efficiency, or efficacy of the product.

**WHEREFORE,** Plaintiff demands damages, including compensatory and punitive damages, against all Defendants, jointly and severally with all defendants named herein, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs.

**FIRST CAUSE OF ACTION – WRONGFUL DEATH (DYMIR STANTON, DECEASED)**

**<u>Plaintiff v. Defendants</u>**

94. The preceding paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

95. Plaintiff brings this action under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. § 8301, and the applicable Rules of Civil Procedure and decisional law.

96. Under the Wrongful Death Act, Plaintiff's decedent, Dymir Stanton, left surviving the following persons who are entitled to recover damages: N.S., minor child, as no recovery for the damages claimed herein was obtained by Dymir Stanton during his lifetime.

97. As a result of the negligent, reckless, intentional, fraudulent, and/or outrageous conduct, of Defendants set forth herein, Plaintiff's decedent was caused serious and grave injuries including death, resulting in the entitlement to damages by said beneficiaries under the Wrongful Death Act.

98. On behalf of the Wrongful Death Act beneficiaries, Plaintiffs claim the full measure of damages allowed under the Wrongful Death Act and the decisional law interpreting said Act, including the loss of services and loss of financial contributions Dymir Stanton would have made to them during his lifetime; the loss of Dymir Stanton's companionship, comfort, society, and guidance and the ambulance, hospital, nursing, medical, funeral and administration expenses occasioned by the Plaintiff's decedent's injuries and death.

**WHEREFORE,** Plaintiff demands damages, including compensatory and punitive damages, against all Defendants, jointly and severally with all defendants named herein, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs.

**SECOND CAUSE OF ACTION – SURVIVAL ACTION(DYMIR STANTON, DECEASED)**

**Plaintiff v. Defendants**

99. The preceding paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

100.      Plaintiff brings this Survival Action on behalf of the Estate of Dymir Stanton, deceased, under and by virtue of 42 Pa. C.S.A. §8302, and the applicable Rules of Civil Procedure and decisional law.

101.      The persons entitled to the Estate of Dymir Stanton, deceased, are as follows: N.S., minor child.

102.      As a result of the negligent, reckless, intentional, fraudulent, and/or outrageous conduct of Defendants set forth herein, Plaintiff's decedent was caused serious and grave injuries including death, resulting in the entitlement to damages under the Survival Act.

103.      Plaintiff claims the full measure of damages under the Survival Act and decisional law interpreting said Act, including lost wages and loss of earning capacity, and the pain, suffering, fear, fright, humiliation, and disfigurement endured by Plaintiff's decedent prior to his death, including physical pain and suffering, mental pain and suffering, and the fright, terror, and mental suffering realized by Dymir Stanton during the protracted period leading to his death.

**WHEREFORE,** Plaintiffs demand damages, including compensatory and punitive damages, against all Defendants, jointly and severally with all defendants named herein, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs.

Respectfully Submitted,

**KLINE & SPECTER, PC**

Respectfully Submitted,

**KLINE & SPECTER, PC**

By: */s/ Shanin Specter, Esquire*

SHANIN SPECTER, ESQUIRE (#40928)
JOHN P. O'NEILL, ESQUIRE (#205677)
FRANK MANGIARACINA, ESQUIRE (#321281)
1525 Locust Street
Philadelphia, PA 19102
215-772-1000
Shanin.specter@klinespecter.com
Jack.oneill@klinespecter.com
Frank.mangiaracina@klinespecter.com
***Attorneys for Plaintiffs***

Date: July 2, 2025

23

## VERIFICATION

I, Nathaniel Dill, am Plaintiff/Administrator of the Estate of Dymir Stanton in the within action, and hereby verify that the facts set forth in the foregoing Civil Action Complaint are true and correct to the best of my knowledge, information, and belief. The language of the document is that of counsel and not my own. To the extent that the contents of the document are based on information furnished to counsel and obtained by them during the course of this lawsuit and their investigation of the facts giving rise to this lawsuit, I have relied upon counsel in taking this verification

The undesigned understands that the statements contained therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: 7-1-2025

NATHANIEL DILL