**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NATHANIEL DILL** | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 25-3397** |
| | : | |
| **80-LOWER,** *et al.* | : | |

**McHUGH, J.**                                                    **December 22, 2025**

## MEMORANDUM

This case arises out of the tragic killing of five people in the Kingsessing neighborhood of Philadelphia. Defendants 80-Lower and Tactical Gear Heads, LLC, and their owner Chad Myers, sell unserialized and otherwise untraceable gun components and at-home gun building kits. They sold one of these products to Kimbrady Carriker, who pleaded guilty to having shot and killed five people in Philadelphia—including Dymir Stanton. His father Nathaniel Dill commenced this action for wrongful death, which Defendants now move to dismiss.

The defense first argues that the alleged shooter must be joined in this action, which would destroy diversity and then require dismissal. Defendants go on to argue that the product in question does not constitute a firearm, undercutting one of the fundamental premises of Plaintiff's theory of liability, warranting dismissal for failure to state a claim. I conclude that joinder of the alleged shooter is unnecessary and otherwise find that Plaintiff has plausibly stated a claim. Defendants' motion will therefore be denied.

## I.      Relevant facts as pled

Kimbrady Carriker had a conviction for violating Pennsylvania's Uniform Firearms Act in 2005 and was therefore legally prohibited from buying, possessing, or owning a firearm. Compl. ¶ 33, ECF 1. On July 1, 2023, Carriker purchased an unfinished AR-15 receiver and an

accompanying jig kit to aid assembly, from Defendant 80-Lower's online store.  *Id.* ¶ 16; Pl. Resp. to Mot. to Dismiss ("Pl. Resp.") at 8, ECF 11.  The product sold to Carriker was not serialized and a background check was not conducted.  Compl. ¶¶ 25, 29.

80-Lower is an Indiana corporation in the business of designing, manufacturing, marketing, selling, and distributing of firearms parts kits and unfinished firearm components for use in creating homemade firearms—also known as "ghost guns."  *Id.* ¶ 6.  80-Lower is owned by Tactical Gear Heads, LLC, also an Indiana corporation, and Chad Myers is the president, founder, and owner of both corporations.  *Id.* ¶¶ 8–10.  Mr. Myers is a domiciliary of Indiana.  *Id.* ¶ 10.

On July 3, 2023, Carriker shot and killed five people in Philadelphia, *id.* ¶¶ 14, 41, a crime for which he has now been sentenced.  The AR-15 style weapon Carriker used in the shootings included the receiver sold by 80-Lower.  *Id.*  The deceased include Dymir Stanton, a 31-year-old Philadelphia man, *id.* ¶¶ 2, 5, 14, 41, whose father brings this wrongful death and survival action.

## II.    Defendants' motion to dismiss for failure to join an indispensable party

### A.  The shooter is not an indispensable party whose joinder is required under Rule 19.

Defendants argue that Carriker is a necessary and indispensable party under Federal Rule of Civil Procedure 19, whose joinder is required, which would in turn destroy complete diversity, resulting in dismissal.[1]  *See* Mot. to Dismiss 10–11, ECF 6-1.  The principal basis for their argument is that in other cases brought against them in state court Carriker has been named as a defendant.  *Id.*

---

[1] Defendants raise this argument through a combination of Rule 12(b)(1) and Rule 12(b)(7).

Rule 19 distinguishes between parties whose joinder is feasible, *see* Fed. R. Civ. P. 19(a), and parties whose joinder is not, *see* Fed. R. Civ. P. 19(b).  Because Carriker's joinder would deprive the Court of subject matter jurisdiction, I conclude that he cannot be joined under subparagraph (a) of Rule 19.

Under subparagraph (b) of the Rule, the question is whether equity demands dismissal of this case in Carriker's absence.  This includes consideration of the interests of all the parties, including Carriker. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 316 (3d Cir. 2007).

Here, as between the Plaintiff and the named Defendants, complete relief can be accorded without Carriker because of the doctrine of joint and several liability.  Under Pennsylvania law when multiple parties' tortious conduct causes a single, indivisible harm, any single tortfeasor can be held fully liable to the plaintiff. *Baker v. AC&S*, 755 A.2d 664, 669 (Pa. 2000).  Such a defendant is not left without recourse, because joint tortfeasor paying more than its proportionate share of liability for an injury may sue a nonpaying jointly liable tortfeasor for contribution. *Id.* Where there is joint and several liability among parties, complete relief is possible against any one of the parties and therefore joinder is not necessary, *Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir. 2008), because courts have long recognized that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit," *id.* (quoting *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (*per curiam*)). *See also Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 (3d Cir. 1988) ("A defendant's right to contribution or indemnity from an absent non-diverse party does not render that absentee indispensable pursuant to Rule 19.").  Here, Mr. Dill has sufficiently alleged that Defendants' conduct is a substantial cause of his son's death, making them joint tortfeasors with Carriker.  Resolution of Plaintiff's claims against Defendants

3

can proceed without Carriker as a party, deferring resolution of any claims Defendants might seek to raise against Carriker.

As to Carriker, at age 47 he was recently sentenced to a term of 37½ to 75 years in prison.[2] The state court criminal docket reflects that he was represented by the Office of the Public Defender. For all practical purposes, as an indigent, incarcerated person he is ill-situated to represent his interests even if this case were dismissed in favor of state court jurisdiction where he could be joined. Any prejudice he might suffer from this federal action proceeding in his absence will be no greater than if it were to proceed in a Pennsylvania court where he would be party in name only. It therefore cannot be said that "equity and good conscience" requires dismissal of this suit. *See* Fed. R. Civ. P. 19(b).

In sum, neither subparagraph of Rule 19 provides a basis for dismissal.

## III. Defendant Myers' motion to dismiss for lack of personal jurisdiction

### A. Plaintiff has made showing sufficient to warrant jurisdictional discovery.

Defendants argue that there is a lack of personal jurisdiction over Mr. Myers because he is a domiciliary of Indiana, was not served in Pennsylvania, and lacks sufficient minimum contacts with the Commonwealth. Mot. to Dismiss 4–5.

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Where, as here, "the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal

---

[2] Philadelphia County Court of Common Pleas, CP-51-CR-00020032024.

jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.*

On the record as it stands, Plaintiff has not established a *prima facie* case of jurisdiction. He has, however, made enough of a showing to warrant discovery on jurisdiction due to his non-frivolous claims. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." (quotation omitted)). Accordingly, Plaintiff is granted ninety (90) days within which to conduct such discovery. Plaintiff shall submit additional briefing on jurisdiction at the end of that period, with Defendant Myers response due fourteen (14) days thereafter.

**B. Defendant Myers' motion to dismiss him as shielded from liability based on the existence of the corporate entities.**

Mr. Dill alleges that Mr. Myers, as president and owner of 80-Lower and TGH, conducted "systematic and continuous business activity within this judicial district" in circumvention of state and federal firearm laws. Compl. ¶¶ 11, 80. Defendant Myers characterizes this as an attempt to pierce the corporate veil and seeks dismissal. Mot. to Dismiss 8–9.

"A request to pierce the corporate veil is not an independent cause of action, but rather is a means of imposing liability established in an underlying cause of action, such as tort or breach of contract, against another." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1035 (Pa. 2018). A motion to dismiss such allegations is therefore premature, particularly when personal jurisdiction has not been established. If Defendant Myers remains a party to this action, he may renew this motion at summary judgment on a fully developed factual record.

IV.    **Defendants' Joint Motion to Dismiss for failure to state a claim**

   **A.  The ATF letters on which Defendants rely are not dispositive of Plaintiff's claim.**

Defendants all move to dismiss the Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *See* Mot. to Dismiss 6–7.  They allege that Plaintiff's complaint is fatally defective because the unfinished AR-15 components they sold to Carriker do not constitute a firearm.[3]

Mr. Dill alleges in part that Defendants circumvented both federal and state firearms law when they sold the kit to Carriker.  Compl. ¶ 19.  Mr. Dill does not specify which federal law(s) Defendants violated.  He does specifically allege that the unfinished AR-15 receiver and jig kit was a firearm under Pennsylvania's Uniform Firearms Act ("UFA"), and therefore one that must be serialized, and requiring of a background check before purchase.  *Id.* ¶ 29.  Such a background check would have shown Carriker could not be sold such a weapon given his conviction.  *Id.* ¶¶ 33–36.  This failure to conduct a background check, Plaintiff contends, supports a conclusion that Defendants negligently entrusted Carriker with the weapon parts that Carriker used to kill Mr. Dill's son, Dymir.  *Id.* ¶ 35.  Defendants dispute that their failure to conduct a background check constitutes negligence, arguing that the product they sold cannot be deemed a firearm.  Mot. to Dismiss 6.

   *1.  The classification of the AR-15 receiver kit as a firearm under federal law*

Defendants cite multiple firearm determination letters from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), claiming that the letters are dispositive of whether the

---

[3] Although Defendants present this argument as a Rule 12(b)(6) motion to dismiss for failure to state a claim, the factual disputes suggest that the arguments raised would be more appropriate at summary judgment.  The Court has nonetheless considered the arguments raised as this stage.

unfinished receiver kit is properly classified as a firearm under the federal Gun Control Act (GCA). *See* Mot. to Dismiss 6–7 (citing Ex. 1, ECF 6-4). Manufacturers may request a determination from the ATF as to whether certain products constitute firearms under the GCA and are therefore subject to its regulations.[4] *See* Mot. to Dismiss. at 12. The ATF then examines the item as submitted and responds to the inquirer. *Id.*

Defendants claim that an ATF letter dated January 18, 2017, determined that the product sold to Carriker was not a firearm under the GCA.[5] Mot. to Dismiss 6–7. In that letter, Polymer80 (which is not a party in this litigation) submitted, and the ATF assessed, a product identified as "PF940C," which is described as a "Glock-type" item. Mot. to Dismiss, Ex. 1, at 1–7, ECF 6-4

---

[4] The GCA defines a firearm as including "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" and "the frame or receiver of any such weapon." 18 U.S.C. §§ 921(a)(3)(A) and (B). At the time of sale to Carriker in 2021, ATF defined a "frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 C.F.R. § 478.11 (2021).

In 2022, ATF promulgated a new rule defining a "receiver" as "the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure." 27 C.F.R. § 478.12 (2022). The ATF also added a definition for partially complete receivers, which include "parts kit[s] that . . . may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver . . . ." *Id.*

The Supreme Court found that this new rule was a permissible use of the statutory authority under the GCA. *See Bondi v. VanDerStok*, 604 U.S. 458, 482 (2025). Some federal courts have used the *VanDerStok* Court's reasoning to find that some weapon parts kits were regulated under the GCA even before the new rule went into effect. *See, e.g.*, *United States v. Fein*, 780 F. Supp. 3d 719, 729 (W.D. Mich. 2025); *Cluney v. Brownells, Inc.*, 777 F. Supp. 3d 1, 13 (D. Me. 2025). Although Plaintiff implicitly asks for the same retroactive treatment here, *see* Pl. Resp. 18-19, such an analysis is not currently necessary to resolve Defendants' Motion.

[5] Technically, Defendants refer to, and include in their exhibit, three separate ATF letters but conflate them as a single letter. I will address each letter individually. When citing the letters, as with all parts of the record, I refer to the ECF page numbering.

("Jan. 2017 Letter"). The photographs attached to the ATF letter support the conclusion that the item assessed is part of a Glock. *See id.* 4–7. But the parties agree that Defendants sold an AR-15 style receiver to Carriker. Compl. ¶ 17; Mot. to Dismiss, Ex. 2, ECF 6-5 ("Carriker Receipt") ((including a screenshot of Carriker's receipt from 80-Lower for "Polymer80 80% Lower Receiver and Jig Kit (*AR-15*)" (emphasis added)). Glocks are handguns, while AR-15s are semi-automatic rifles. *See United States v. Olivares*, 473 F.3d 1224, 1225 (D.C. Cir. 2006) (describing a Glock as a handgun and an AR-15 as a rifle); *Commonwealth v. Dortch*, 284 A.3d 889, at *1–2 (Pa. Super. Ct. 2022) (same). They are decidedly different types of firearms. Furthermore, the item in ATF's letter looks nothing like the receiver kit sold to Carriker. *Compare* Jan. 2017 Letter at 4–7, *with* Mot. to Dismiss, Ex. 3, at 1, ECF 6-6. And the product sold to Carriker is listed on the receipt as "p80-NKIT-BLK," with no reference to the "PF940C" as analyzed by ATF. *See* Carriker Receipt. The January 2017 letter assesses a product wholly different from the one sold to Carriker. It does not therefore definitively refute Plaintiff's assertion that the unfinished receiver was a firearm under federal law.

The next ATF letter, dated February 18, 2015, concerns an AR-15 type receiver. *See* Mot. to Dismiss, Ex. 1, at 8–9, ECF 6-4 ("Feb. 2015 Letter"). In its letter, also a response to a Polymer80 submission, the ATF determined that the submitted item, "an AR-l 5 pattern receiver casting," was not a firearm and therefore not subject to regulation under the GCA. *Id.* at 10. Although the kit sold to Carriker was an unfinished AR-15 lower receiver and accompanying jig kit, it does not appear to be the same product assessed by the ATF.

The February 2015 letter states that there is an accompanying photograph of the item, *id.*, but no such photograph appears in Defendants' exhibit. This same ATF letter was at issue in an unrelated case, *City of Syracuse v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, where

the court analyzed a record that included the entire letter *with* the photographs.  2021 WL 23326, at *6–8 (S.D.N.Y. Mar. 19, 2021); *see also id.* ECF 60-3 at 25–28.[6]  In ATF's photographs, the only item present—and therefore the only item assessed—is the receiver.  This distinction matters, because   ATF determinations are only "relevant to the item as submitted."  Mot. to Dismiss Ex. 1, at 15, ECF 6-4 ("Nov. 2015 Letter").  "If the design, dimensions, configuration, method of operation, processes or utilized materials . . . [differ], this classification would be subject to review and would require a submission to [ATF] of an exemplar utilizing the new manufacturing process."  *Id.*; *see also id.* at 15–16 ("[C]orrespondence from our Branch is dependent upon the particular facts, designs, characteristics or scenarios presented. Please be aware that although other cases . . . may appear to present identical issues . . . [w]e caution applying this guidance . . . because complex legal or technical issues may exist that differentiate this scenario or finding from others that only appear to be the same.").

The parties agree that Defendants sold Carriker a "Polymer 80 80% Lower Receiver and Jig Kit" for an AR-15.  The item ATF analyzed in its February 2015 determination letter was an unfinished AR-15 receiver; the product sold to Carriker was an unfinished lower receiver *with a jig kit*.  It is not clear that the unfinished receivers are the exact same model to begin with, and the addition of the jig kit creates an additional distinction.  The ATF's February 2015 letter, therefore, does not definitively apply to the product sold to Carriker.

The third and final ATF determination letter to Polymer80 included in Defendants' exhibit is dated November 2, 2015, and analyzes a "Glock-type 'GC9 Blank'" as well as an "AR 10-type

---

[6] Judicial notice is permissible here.  Courts "may take judicial notice of the contents of another Court's docket."  *Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014).

item" that goes by the name of "WARRHOGG BLANK." Nov. 2015 Letter at 12. The ATF determined that neither of these products fell within the GCA's definition of firearms and therefore were exempt from its regulations. *Id.* at 14–15. Neither of these products is the unfinished AR-15 receiver and jig kit that was sold to Carriker, rendering this letter irrelevant to the present matter.

At this stage, Mr. Dill has adequately pled that the product Defendants sold to Carriker was a firearm according to federal law, and Defendants' submissions suggesting otherwise do not carry dispositive weight.

> ## 2. The classification of the AR-15 receiver kit as a firearm under Pennsylvania law

To further support that the product was a firearm, Plaintiff relies upon a December 2019 Pennsylvania Attorney General Opinion stating that under the UFA, "firearm" includes unfinished receivers. Compl. ¶ 22. Thereafter, the Pennsylvania State Police ("PSP") adopted a policy which would have required a background check via the Pennsylvania Instant Check System ("PICS") for sale of "partially manufactured receivers." The policy provided that a "partially-manufactured receiver is a firearm as defined in the Applicable Sections [of UFA] if it is either 'designed' or 'may readily be converted' into a completed receiver with the capability to expel any projectile by the action of an explosive." Pl.'s Resp. Ex. B, at 4, ECF 11-3.

Defendants respond that enforcement of this policy was later suspended. In *Landmark Firearms LLC v. Evanchick*, a Commonwealth Court judge enjoined the PSP from enforcing the newly adopted policy involving "partially manufactured receivers" after finding the term undefined and impermissibly vague in violation of Due Process. 2020 Pa. Commw. Unpub. LEXIS 686, at *2. Defendants seemingly rely on *Landmark* for the proposition that the product was not a firearm as defined under Pennsylvania law. Mot. to Dismiss 7.

As I read *Landmark*, it does not vitiate the Attorney General's Opinion. Instead, it criticizes the manner in which the Pennsylvania State Police undertook to act upon that Opinion. It may prove to be the case that Defendants have a strong causation defense to the extent that Plaintiff relies on Pennsylvania law.  Nonetheless, Mr. Dill has sufficiently pled that the item sold to Carriker is a firearm within the meaning of the Attorney General Opinion, pursuant to UFA. Because the alleged classification of the item as a firearm under UFA, as pled, bolsters a finding of negligence, regardless of a background check, Plaintiff has stated a claim.

**B.  Plaintiff's allegations of negligence are not limited to statutory violations.**

Proof that a defendant violated a statute may lend force to a negligence claim, but such proof is not required under Pennsylvania law to state a claim for negligence.  Negligence is broadly defined as "the absence of care under the circumstances," and "[t]he test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act."  *Brusis v. Henkels*, 102 A.2d 146, 148 (Pa. 1954).  Here, Plaintiff has alleged that Defendants "designed, marketed and employed a method of sale that was intended to be used by criminals and purchasers who intended to use their ghost gun products in an unlawful manner bosting on their website that they circumvented protections, laws and rules such as those established by PUFA."  Compl. ¶ 38.  Plaintiff further alleges that "[a]t all relevant times hereto, Defendants knew or should have known that those who intended to use a firearm for a criminal act would inevitably pursue firearms that could be obtained without an appropriate background check."  *Id.* ¶ 51.  And Plaintiff alleges that "[a]t all relevant times hereto, Defendants knew or should have known that those prohibited from possessing firearms would inevitably pursue firearms that could be obtained without appropriate record keeping."  *Id.* ¶ 52.

Given these broad allegations, independent of the statutes and regulations Plaintiff has invoked, I cannot as this juncture conclude as a matter of law that Plaintiff fails to state a claim.

**V.    Conclusion**

For the reasons set forth above, Defendants Motion to Dismiss will be denied.  An appropriate order follows.

 /s/ Gerald Austin McHugh
United States District Judge