**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NATHANIEL DILL** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-3397** |
| | : | |
| **80-LOWER, *et al.*** | : | |

**McHUGH, J.** **October 29, 2026**

**MEMORANDUM**

This is a wrongful death action arising out of the marketing and sale of unfinished firearm kits and components used to create homemade weapons commonly referred to as "ghost guns," which evade federal firearms restrictions because they lack serial numbers and are virtually untraceable. Chad Myers, founder of the corporate defendants who supplied the gun in question contests personal jurisdiction as to him individually. For the reasons below, I am constrained to conclude that this Court does not have personal jurisdiction over Defendant Myers.

**I. Facts as Pled**

Plaintiff is the father of Dymir Stanton, a 31-year-old Philadelphia man tragically killed by a ghost gun, who has sued Defendants 80-Lower, Tactical Gear Heads, LLC, and Chad Myers. Compl. ¶¶ 2, 5, 14, 41, ECF 1. 80-Lower is an Indiana corporation that designs, manufactures, sells, and distributes ghost guns, *id.* ¶ 6, and allegedly produced the gun used to kill Mr. Stanton's son. *Id.* ¶ 43. Tactical Gear Heads, LLC, also an Indiana corporation, owns 80-Lower. *Id.* ¶¶ 8–10. Chad Myers, a domiciliary of Indiana, is the president, founder, and owner of both corporations. *Id.*

Defendant Myers argues that Plaintiff cannot establish the requisite minimum contacts needed for this Court to exercise personal jurisdiction consistent with the requirements of due

process because he did not participate in the sale at issue nor did he specifically target Pennsylvania in the marketing of ghost guns. Reply Mot. to Dismiss ("Mot. to Dismiss") at 2, ECF 19. In response,[1] Plaintiff argues that Myers purposefully evaded guidance from the Pennsylvania Attorney General and authorized sales in Pennsylvania in violation of the Philadelphia Code to sell ghost guns in Pennsylvania, which resulted in significant harm to the forum. PI. Resp. to Mot. to Dismiss ("Resp.") at 4, ECF 18.

## II. Standard of Review

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Where, as here, "the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction, and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.*

## III. Discussion

### A. The standard for establishing jurisdiction.

A federal court sitting in Pennsylvania has jurisdiction over the parties to the extent allowed by Pennsylvania's long-arm statute. *Miller Yacht Sales, Inc.*, 384 F.3d at 96. This statute authorizes a court to exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States," and that grant of personal jurisdiction "may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b); *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 948 F.3d 124, 129 (3d Cir. 2020); *Levy v. Hfactor, Inc.*, No. CV 24-4160, 2026 WL 2020457, at *2

[1] Plaintiff was granted a total of 150 days to conduct jurisdictional discovery.

(E.D. Pa. July 13, 2026). Plaintiff does not allege that Pennsylvania has general jurisdiction over Myers, a non-domiciliary who was not served here and has not consented to suit in the Commonwealth. Plaintiff asserts specific jurisdiction and must establish that Myers has "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). This Circuit has interpreted *International Shoe*'s standard to create a three-part inquiry: (1) the defendant "purposefully directed [its] activities at the forum" (2) the litigation arose out of or related to one or more of these activities, and, if these two elements are met, (3) the jurisdiction otherwise comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). In other words, there must be a "strong relationship among the defendant, the forum, and the litigation." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 365 (2021).

In limited circumstances, specific jurisdiction can be established by means other than direct in-forum activities. In a libel action, *Calder v. Jones*, the Supreme Court held that "jurisdiction over" defendants was "proper in California based on the 'effects' of their . . . conduct in California." 465 U.S. 783, 789 (1984). These "effects" included "the article that was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation." *Id.* 788–89. The Third Circuit has distilled the *Calder* "effects" test to require "a plaintiff to plead facts that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024) (citing *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001)).

**B. Plaintiff has not established a prima facie case of personal jurisdiction under either the traditional or "effects" test.**

1. *Traditional test*

Defendant argues that he personally lacks relevant contacts with Pennsylvania because he was not directly involved in the sale of the weapon giving rise to this case, and any acts he committed were in his capacity as a corporate officer, and therefore the exercise of personal jurisdiction over him individually would be inconsistent with due process. Mot. to Dismiss at 4, ECF 19.

In *Walden v. Fiore*, the Supreme Court held that the contacts needed to assert jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum." 571 U.S. 277, 284−86 (2014) (emphasis in original). Discovery here revealed that the order in question was placed online through Tactical Gear Heads' website and completed through an affiliated logistics company. Myers Dep., Ex. C, at 31, 71–74. There is no evidence of personal involvement by Meyers. In *Miller Yacht Sales, Inc.,* the Court of Appeals found a basis for jurisdiction where the defendants directed a stream of communications into the forum state regarding a specific marketing contract. 384 F.3d at 96. No such communications took place here. Similarly, in *O'Connor*, there were multiple exchanges between a tourist and a resort about a specific visit during which the tourist was injured. 496 F.3d at 317. Plaintiff points to no such exchanges with Myers here.

Plaintiff argues that in first suspending sales in Pennsylvania, and then reinstating them, Myers is personally implicated in facilitating the sale of the weapon that killed Dymir Stanton. From a moral perspective, there is some resonance to this argument. But from a legal perspective, a corporate officer, even an owner of a company, is generally considered to be acting in the interest of the corporation, absent persuasive evidence to the contrary. In determining whether a corporate

officer should be subject to personal jurisdiction, courts look to factors such as the officer's role in the corporate structure, the quality of the officer's contacts, and the extent and nature of the officer's participation in the alleged tortious conduct. *See Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 676 (E.D. Pa. 1997). Furthermore, courts within this Circuit have held that even when a plaintiff seeks to "establish personal jurisdiction over an individual corporate officer or director on the basis of tortious conduct committed in the exercise of his corporate duties," the plaintiff still "must prove, by a preponderance of the evidence, that the non-resident officer or director independently has sufficient forum-related contacts." *See Simkins Corp. v. Gourmet Res. Int'l*, 601 F. Supp. 1336, 1345 (E.D. Pa. 1985). Here, Myers has no contacts with Pennsylvania except through his incorporated businesses and did not participate in the sale giving rise to this case. He took steps to market in Pennsylvania, and reinstated sales there after the Commonwealth Court of Pennsylvania suspended enforcement of the Attorney General's guidance on the regulation of ghost guns but when he did so he was an officer of the corporate defendants. Plaintiff is likely correct that "Chad Myers' role in Tactical Gear Heads was as the person with total control and day-to-day management and the quality of his contacts included tens of thousands of ghost gun products being sold into Pennsylvania by him at his discretion." *See* Resp. at 10, ECF 18. But the owners of closely held corporations routinely conduct corporate affairs without erosion of corporate identity, and it is not reasonable for an individual corporate officer to anticipate that he will "be hauled into any court in every forum in which the corporation transacts business." *See Simkins*, 601 F. Supp. at 1345. Absent any other contacts with Pennsylvania or any personal involvement in the transaction underlying this case, there is no basis on which to assert jurisdiction over Myers under the traditional test for specific jurisdiction.[2]

[2] Resolution of this jurisdictional issue does not resolve whether there would be any basis on which to pierce the corporate veil in the event of a judgment against one of the corporate entities.

*2. "Effects" test*

As a preliminary matter, it bears mention that the "effects test" is limited to intentional torts, *Hasson,* 114 F.4th at 187, and only one of Plaintiff's claims pleads intentional conduct, Count IV, styled as "Fraudulent/Intentional Misrepresentation." *See* Compl., at 14–15, ECF 1.

Regardless, Plaintiff faces the same obstacles as to this theory of jurisdiction—the lack of any evidence that Myers was personally involved in the sale underlying this case, and a lack of evidence that he was acting in an individual capacity rather than as a corporate officer in making the decision to re-commence sales in Pennsylvania. Beyond that, the "effects test" requires a plaintiff to prove the defendant expressly aimed their conduct at the state, and "cannot be predicated solely on harm felt within the forum." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Given that Tactical Gear Heads had marketed in Pennsylvania along with most other states before the Attorney General's opinion on ghost guns, it is difficult to characterize its restarting sales there as "targeting" Pennsylvania, because the website through which it marketed would have been equally accessible during the time when it declined to ship there. *See Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (holding that the "effects" test was not satisfied because the website was accessible worldwide); *Hasson,* 114 F.4th at 190 (noting that a company targeting a "national audience" "to drive customers to its website" is not enough to satisfy the "effects" test).

The tragic death of Mr. Stanton was certainly foreseeable, but that by itself does not suffice to establish jurisdiction over Myers individually.

**C. Plaintiff has been provided sufficient opportunity for discovery.**

This Court has granted ample time for jurisdictional discovery. Plaintiff was initially granted 90 days, ECF 13, which was extended by an additional 60 days. ECF 14. A total of 150 days suffices, and Plaintiff's request for additional time will be denied.

## IV. Conclusion

For the reasons set forth above, I am obligated to grant Defendant Chad Myers' Motion to Dismiss for lack of personal jurisdiction. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge